# EXHIBIT B

From: 7024363705     Page: 1/3     Date: 11/30/2006 1:53:20 PM

## NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**Education One®** Education One Continuing Education Loan

**Lender:** JPMorgan Chase Bank, N.A.     **School:** UNIVERSITY OF NEVADA LAS VEGAS

**Loan Amount Requested:** $30000.00     **Academic Period:** 01/2007-05/2007

**Deferment Period Margin:** 8     **Repayment Period Margin:** 8     **Loan Origination Fee Percentage:** 10.50

**Borrower Name:** Alex J Taylor     **Home Address:** 640 E Horizon Dr Apt 913     Henderson, NV 89015

**Social Security #:** ███████/028     **Date of Birth:** ████1986     **Home Telephone:** ████0465

**Current Employer:** COURTESY IMPORTS     **Employer Telephone:** (702) 657-8000

**Current Position:** Other

Years of Previous Employments: 5 Years 3 Months     Years There: 0 Years 1 Months

**Borrower Citizenship (check one box):** ☒ U.S. Citizen     ☐ Eligible Non-Citizen (Alien Number)
Personal Reference Name
Reference Street Address
Reference City/State/Zip

Signature of Borrower: _____     Date: 11/26/06

ID# A1-046005204

SS# ████████-7028

LENDER COPY

EO.09-07.CLCW.10DO.0108

2006 NOV 30  P 2: 48

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" means the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:**  I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added per (see Paragraph F) (together the "Principal Sum", interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth herein.

**B. LOAN; DISCLOSURE STATEMENT:**
1. By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement.  When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).  You have the right to disburse my loan through an agent.

2.  If you agree to make a loan to me, you will mail me a disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). At your option, you may make the Disbursement Check payable to the School or co-payable to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee.  The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3.  If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan.  To cancel my loan, I will give you a written cancellation notice, together with my unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.3, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1.  "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).
2.  The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3.  "Deferment End Date" has the following meaning:
(a)  If the Borrower is enrolled in a degree or certificate-granting program at the School, the earlier of the date which is (i) 180 days after the Borrower graduates or earns the certificate, (ii) 180 days after the Borrower ceases to be enrolled at the School, or (iii) 2 years after date of the first loan disbursement under this Credit Agreement.
(b)  If the Borrower is not enrolled in a degree or certificate-granting program at the School, the earlier of the date which is (i) 180 days after the end of the Academic Period described on the first page of this Credit Agreement, or (ii) 180 days after the Borrower ceases to be enrolled at the School.
4.  The "Repayment Period" begins the day after the Deferment Period ends.  The Repayment Period is 20 years, unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1.  Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D.3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D.2) divided by the number of days in that calendar year.
2.  Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes.  The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one month London Interbank Offered Rate ("LIBOR") as

published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rates published on the first business day of the immediately preceding calendar months, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index.  If the Current Index is no longer available, you will choose a comparable index.
3.  Capitalization – I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.11), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**
1.  Deferment Period – You will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan).  Statements will be sent to the Borrower at the address shown on your records.  I may, but am not required to, make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal loan balance at the end of the Deferment Period, as described in Paragraph D.3. Thereafter, the accrued interest will be treated as principal.
2.  Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins.  During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less.  I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge.  If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.  Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.
3.  Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date.  I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.
4.  Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional principal, interest, and/or late fees at the end of the Repayment Period.  If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.
5.  Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and I submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.
6.  Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (monthly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount.  The dollar amount of any Loan Origination Fee

will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage may be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 9.5% on the entire Principal Sum would equal 10.4972% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty or charge.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**
1. I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions.

I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L.15.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School. I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that I am in default under this Credit Agreement.
9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.
10. The Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.
11. **I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.**
12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g. enrollment status, prior loan history, and current address).
13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.
14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.
15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will refax the first page upon request by Lender. I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender. If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.
**M. DISCLOSURE NOTICES**

> **ALL APPLICANTS:**
> **IMPORTANT FEDERAL LAW NOTICE—**
>
> *Important information about procedures for opening a new account:*
> **To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**
>
> *What this means for you:*

**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower, not the Lender.)

IOWA RESIDENTS: If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction.

IOWA, KANSAS and NEBRASKA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender.) NOTICE TO CONSUMER: 1. Do not sign this Credit Agreement before you read it. 2. You are entitled to a copy of this Credit Agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEVADA RESIDENTS: This is a loan for study.

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS: I understand and agree that you may obtain a consumer credit report in connection with updates, renewals or extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

OKLAHOMA RESIDENTS: If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision. If the loan for which I am applying is granted, I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that

all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.