FILED
2021 FEB 22 PM 12:32
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TAYLOR ET AL,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1 ET AL,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:19-CV-00120-BSJ<br><br>District Judge Bruce S. Jenkins |

Before the Court are cross motions for summary judgment.[1] The Court heard oral argument on the motions for summary judgment on July 16, 2020.[2] Mr. Ronald Ady appeared on behalf of Plaintiffs Alex and Nallely Taylor ("the Taylors".) Mr. Michael Alltmont appeared on behalf of Defendants National Collegiate Student Loan Trust 2007-1 ("NCSLT"), Transworld Systems ("TSI"), and EGS Financial Care ("EGS").[3] The Court reserved on the matter and ordered the parties to submit additional briefing.[4]

---

[1] Defs.' Mot. Summ. J., ECF No. 86; Pls.' Mot. Summ. J., ECF No. 90.

[2] Hr'g Mins., ECF No. 132.

[3] EGS was formerly known as NCO. Pls.' Am. Compl., ECF No. 8. On or about November 5, 2012, NCO became the default loan servicer on Mr. Taylor's loan. Defs.' Mot. Summ. J., ECF No. 86. On or about November 1, 2014, TSI succeeded NCO as the default loan servicer. *Id.*

[4] Defendants submitted additional briefing on July 23, ECF No. 133, and Plaintiffs submitted reply briefing on July 30, 2020, ECF No. 134. The matter is now fully briefed.

Having considered the parties' briefs, the evidence presented, the arguments of counsel, and the relevant law, the Court hereby GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

BACKGROUND

I. Factual Background

This case revolves around a $30,000 student loan and Defendants' efforts to collect on it. When the Taylors filed the present action in November of 2018, they alleged the loan at issue was the result of identity fraud and alternatively that NCSLT could not prove it owned the loan.[5] The Taylors have since retracted the identity theft claims and admitted that Mr. Taylor took out the loan as will be explained below.[6] However, to fully understand this case, one must understand the history of the loan origination and sale to NCSLT.

In 2006, Plaintiff Mr. Taylor took out a student loan for the principal amount of $30,000 from JP Morgan Chase Bank ("Chase").[7] Mr. Taylor endorsed and deposited the check.[8] The purpose of the loan was for Mr. Taylor to attend the University of Nevada, Las Vegas ("UNLV") in the spring of 2007.[9] But Mr. Taylor did not attend UNLV in the spring of 2007.[10] Mr. Taylor never lived in Las Vegas, but rather at all relevant times was a resident of Sandy, Utah.[11]

---

[5] Pls.' Am. Compl., ECF No. 8. The case was originally filed in Utah state court in November of 2018. It was removed to federal court by defendants on the basis of diversity jurisdiction in February of 2019. Notice of Removal, ECF No. 3.

[6] Notice of Withdrawal of Pls.' Non Est Factum Claims, ECF No. 129.

[7] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A-1. JP Morgan Chase Bank is the successor by merger to Bank One, N.A. Defs.' Resp. to Jan. 6, 2020 Court Order, ECF No. 62, Ex. 3, Pool Supplement and Schedule Excerpt.

[8] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A-2.

[9] *Id.*, Ex. A-1.

[10] Pls.' Am. Compl., ECF No. 8.

[11] *Id.*

In March of 2007, Chase sold Mr. Taylor's loan as part of a pool of student loans to NCSLT.[12] On November 14, 2009, the first payment became due on Mr. Taylor's loan after deferment.[13] On September 1, 2010, Mr. Taylor's loan charged off.[14] He had not made any payments.[15] On October 15, 2014, NCSLT commenced a collection action against Mr. Taylor in Utah state court ("the 2014 collection action").[16] Mr. Taylor did not appear, and on January 27, 2015, a default judgment was entered against him for the amount of $65,607.76.[17] Mr. Taylor did not appeal the default judgment.[18] In 2018, Defendant TSI, acting on behalf of NCSLT, began to garnish Mr. Taylor's wages.[19]

---

[12] The Taylors dispute the validity and proof of the sale. Pls.' Mot. Summ. J., ECF No. 90.

[13] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A-5.

[14] *Id.*

[15] *Id.*

[16] Pls.' Am. Compl., ECF No. 8. My. Taylor was personally served with the Summons and Complaint on October 9, 2014. Defs.' Mot. Summ. J. App., ECF No. 87, Ex. E-1. On October 15, 2014, the Summons and Complaint were filed with the Third District Court. *Id.*, Ex. E-2.

[17] Pls.' Am. Compl., ECF No. 8. The district court clerk entered default. Defs.' Mot. Summ. J. App., ECF No. 87, Ex. E-4. Utah Rule of Civil Procedure 55(b)(1) permits the clerk to enter default judgment when plaintiff's claim against defendant is for a sum certain. Rule 55 provides the clerk shall enter judgment if: "A) the default of the defendant is for failure to appear; B) the defendant is not an infant or incompetent person; C) the defendant has been personally served pursuant to Rule 4(d)(1); and D) the plaintiff, through a verified complaint, an affidavit, or an unsworn declaration . . . submitted in support of the default judgment, sets forth facts necessary to establish the amount of the claim, after deducting all credits to which the defendant is entitled, and verifies the amount is warranted by information in the plaintiff's possession."

In support of NCSLT's motion for default, NCSLT submitted the note disclosure statement, the note signed by Alex Taylor, the loan payment history report, and a declaration of costs and attorney's fees. Defs.' Mot. Summ. J. App., ECF No. 87, Ex. E-3. The total judgment was for the amount of $65,607.76. Defs.' Mot. Summ. J. App., ECF No. 87, Ex. E-4. The total amount included Mr. Taylor's account balance ($49,258.30), interest from September 1, 2010 to August 7, 2014 ($15,944.46), and accrued costs to date of judgment ($405.00). *Id.*

Mr. Taylor was served a notice of judgment by US Mail. Defs.' Mot. Summ. J. App., ECF No. 87, Ex. E-5.

[18] May 14, 2020 Hr'g Tr. (The Court: "Nobody appealed the default judgment." Mr. Ady: "Nobody appealed, no.").

[19] Pls.' Am. Compl., ECF No. 8.

II. The Taylors' Present Lawsuit

In November of 2018, Plaintiffs Alex and Nallely Taylor commenced this action in Utah state court.[20] The Taylors moved for relief from the default judgment under Utah Rule of Civil Procedure 60(b)(6).[21] Rule 60(b) allows a court to relieve a party from judgment "on motion and upon just terms" for mistakes, inadvertence, neglect, newly discovered evidence, fraud, void judgments, satisfied judgments, or other reasons. Rule 60(b)(6) is a catchall provision, and only specifies "any other reason that justifies relief."[22] The rule further specifies that a motion under Rule 60(b) must be brought "within a reasonable time." Utah R. Civ. P. 60(c).

The Taylors argued they were entitled to relief under Rule 60(b)(6) because Defendants lacked standing to bring the original collection action in state court.[23] Defendants lacked standing, the Taylors argued, because Mr. Taylor was the victim of identity theft and did not take out the loan, or alternatively because Defendants could not prove they owned Mr. Taylor's loan.[24] They argued this lack of standing thus deprived the state court of subject matter jurisdiction and rendered the judgment void.[25]

---

[20] Notice of Removal, ECF No. 3, Ex. A.

[21] Pls.' Am. Compl., ECF No. 8. The Taylors also moved for relief pursuant to Utah Code Ann. § 13-11-19(1)(a), a provision of the Utah Consumer Sales Practices Act ("UCSPA"). *Id.* Utah Code Ann. § 13-11-19(1)(a) permits a consumer to bring an action for violations of the UCSPA.

[22] Rule 60(b) subdivisions one though five list specific reasons to relieve a party from judgment: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or other misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or it is no longer equitable that the judgment should have prospective application. Utah R. Civ. P. 60.

[23] Pls.' Am. Compl., ECF No. 8.

[24] *Id.* The Taylors later added an additional theory regarding Defendants' alleged lack of standing: Defendant NCSLT, as a Delaware statutory trust, could not bring the state court action because Utah does not recognize the capacity of a Delaware statutory trust to sue. Pls.' Mot. Summ. J., ECF No. 90. This theory was raised for the first time in the Taylors' motion for summary judgment and will be addressed below.

[25] Pls.' Am. Compl., ECF No. 8.

The Taylors complaint brought eight causes of action against Defendants: 1) Violation of the Utah Consumer Sales Practices Act "UCSPA" § 13-11-19(1); 2) Fraud upon the court; 3) Invasion of privacy; 4) Violation of UCSPA § 13-11-4(2); 5) Communications fraud; 6) Unjust enrichment; 7) Intentional infliction of emotional distress; and 8) Civil conspiracy.[26] Underpinning each cause of action were the Taylors' assertions that Mr. Taylor was the victim of identity theft, that Defendants were aware that Mr. Taylor did not take out the loan, and that Defendants were wrongfully pursuing collection of a debt from Mr. Taylor even though they knew he did not owe on it.[27] Additionally, for each cause of action, the Taylors also plead in the alternative that Defendants could not prove they owned the loan and therefore did not have standing when they initiated the 2014 collection action.[28] In February 2019, the case was removed to federal court by Defendants on the basis of diversity jurisdiction.[29]

---

[26] *Id.*

[27] *See* Pls.' Am. Compl., ECF No. 8. For example, Plaintiffs assert under their first cause of action for violations of the UCSPA § 13-11-19(1), "Plaintiff Alex Taylor was never party to the fraudulent loan, and because the Plaintiff Alex Taylor was never a party to that transaction, NCSLT 2007-1 could not suffer an injury due to the Plaintiff Alex Taylor's non-existent conduct, so that the entry of default judgment against the Plaintiff Alex Taylor did not redress the Defendant NCSLT 2007-1's alleged injury."

Likewise, under Plaintiffs' second cause of action for fraud upon the court, Plaintiffs state "NCSLT 2007-1 and TSI prosecuted the collection action . . . all while knowing that: the student loan for which NCSLT 2007-1 claimed was the product of forgery or fraud, that is, Plaintiff Alex Taylor asserts (on information and belief) that NCSLT 2007-1 knew either directly or through its servicing agent AES that the Plaintiff Alex Taylor had not signed the student loan documents which created the obligation for which NCSLT 2007-1 claimed in the collection action, that Plaintiff Alex Taylor was not a party to those student loan documents . . ."

[28] *See id.* For example, Plaintiffs asserted under the first cause of action: "Alternatively, on information and belief, NCSLT 2007-1 never acquired ownership of the student loan which is the subject of the collection action . . . and so had no standing to bring that collection action, thereby rendering the judgment entered in the collection action void."

Plaintiffs assert under the second cause of action: "NCSLT 2007-1 did not own the student loan which was the subject of the collection action in case no. 140415060. In particular, at all times material to the Plaintiffs' claims NCSLT 2007-1, NCO and TSI knew or should have known NCSLT 2007-1 did not have the chain of assignment documents necessary to establish that it acquired the student loan from the originator of the student loan, JP Morgan Chase Bank . . ."

[29] Notice of Removal, ECF No. 3.

III. The Taylors' Motion to Amend the Complaint

In October of 2019, Plaintiffs sought leave to amend their complaint.[30] The proposed

amended complaint added a new theory to the case.[31] Mr. Taylor's loan was discharged in

bankruptcy, Plaintiffs argued, because a recently issued Fifth Circuit opinion[32] held that certain

student loans could be dischargeable under the bankruptcy code.[33] Therefore, Plaintiffs argued

the state court judgment was void because Mr. Taylor's debt was discharged in bankruptcy in

2009.[34] Up until this point in the litigation, Plaintiffs insisted that Mr. Taylor was the victim of

identity theft.[35] However, the proposed amended complaint also sought to add new facts to the

case – that Mr. Taylor filed for bankruptcy in 2009 and listed defendant NCSLT on his creditor's

matrix.[36] Defendants opposed the proposed amendment and argued the new allegations were

wholly inconsistent with Plaintiffs' theory of identity theft.[37]

On January 6, 2020, the Court held a hearing on Plaintiff's Motion to Amend the

Complaint.[38] At the hearing, the Court inquired into these contradictory allegations, at which

point Mr. Ady conceded Mr. Taylor took out the loan in question.[39] The Court ruled at the

hearing and denied the Motion to Amend the Complaint.[40] The Court noted Mr. Taylor listed the

---

[30] Second Mot. to Amend Compl., ECF No. 43.

[31] *Id.*, Proposed Amended Complaint.

[32] *In re Crocker*, 941 F.3d 206 (5th Cir. 2019), as revised (Oct. 22, 2019).

[33] Second Mot. to Amend Compl., ECF No. 43.

[34] *Id.*, Proposed Amended Complaint.

[35] Pls.' Am. Compl., ECF No. 8.

[36] Second Mot. to Amend Compl., ECF No. 43, Proposed Amended Complaint.

[37] Defs.' Mem. Op. to Second Mot. to Amend Compl., ECF No. 48.

[38] Hr'g Mins. Jan. 6, 2020, ECF No. 57.

[39] Hr'g Tr. Jan. 6, 2020, ECF No. 60, (The Court: "Now he's either the guy or he isn't the guy." Mr. Ady: "I would have to say that he's the guy. I think our position here on this motion is he is the guy.").

[40] *Id.*

6

student loan obligation as undisputed on his bankruptcy creditor's matrix.[41] Defendants moved

for sanctions and argued that Plaintiffs had deliberately misled the Court.[42] The Taylors later

officially withdrew their allegations that Mr. Taylor did not take out the student loan.[43]

DISCUSSION

## I. Summary judgment:

A court shall grant summary judgment if the movant shows there is no genuine dispute as

to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to

non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, only facts to which there

is a "genuine" dispute must be viewed in the light most favorable to the non-moving party. *Id.* at

380. A genuine dispute exists where the record taken as a whole could lead a rational trier of fact

to find for the nonmoving party. *Id.*

## II. Parties' Arguments

The Taylors argue Defendants cannot prove they own Mr. Taylor's loan and therefore

NCSLT did not have standing when it commenced the collection action in 2014.[44] In support of

this theory, the Taylors assert NCSLT did not disclose any assignment documents showing Mr.

Taylor's loan was assigned from Chase.[45] They also argue NCSLT cannot prove the sale from

---

[41] *Id.*, (The Court: "[H]asn't he asserted in his pleadings that he's not the guy?" Mr. Ady: "He has." The Court: "But yet, in 2009, in an uncontested listing in his schedules, he shows them as creditor, is what you tell me, uncontested.").

[42] Defs.' Mot. for Sanctions, ECF No. 64. **The Motion for Sanctions is not the subject of the present order.**

[43] Notice of Withdrawal of Pls.' Non Est Factum Claims, ECF No. 129. Although the hearing on the motion to amend the complaint was held on January 6, 2020, the Taylors did not officially withdraw the factual allegations until July 13, 2020.

[44] Pls.' Mot. Summ. J., ECF No. 90. The Court notes the Taylors' action is likely untimely under Federal Rule of Procedure 60(c). As the matter is fully briefed, the Court will address the merits.

[45] *Id.*

Chase was valid because a condition precedent to the sale was never satisfied, specifically that the loan was never guaranteed by The Education Resources Group, Inc. ("TERI") because it did not receive the original note.[46] Lastly, the Taylors challenge the sufficiency and admissibility of schedule 1, a key document purporting to show Mr. Taylor's loan was part of a pool of loans sold from Chase to NCSLT.[47]

Additionally, the Taylors brought new theories regarding NCSLT's lack of standing in their motion for summary judgment.[48] The Taylors argue NCSLT "plead itself out of court" in the collection action because it brought the action as a Delaware statutory trust, and trusts have no independent existence or right to sue under Utah law.[49] The Taylors further argue NCSLT should have registered under the Utah Business Trust Registration Act to have standing in Utah state court.[50] Because NCSLT affirmatively plead a lack of standing, the Taylors argue the state court judgment is void.[51] The Taylors ask this Court to grant their motion for summary judgment, to set aside the state court default judgment as void, and to dismiss the case with prejudice.[52]

Defendants also brought a motion for summary judgment and argue the evidence conclusively establishes NCSLT owns Mr. Taylor's loan.[53] Additionally, Defendants argue they had standing as a Delaware statutory trust to bring the state court action.[54] Alternatively,

---

[46] *Id.*

[47] *Id.*

[48] *See id.*

[49] *Id.*

[50] Pls.' Reply to Pls.' Mot. Summ. J., ECF No. 126.

[51] Pls.' Mot. Summ. J., ECF No. 90.

[52] *Id.*

[53] Defs.' Mot. Summ. J., ECF No. 86.

[54] Defs.' Reply to Resp. to Mot. for Sanctions, ECF No 120.

Defendants argue the Taylors' new arguments that NCSLT did not have standing as a trust and should have registered under the Utah Business Trust Registration Act are barred by *res judicata*.[55] Defendants ask this Court to dismiss all of the Taylors' claims with prejudice, in addition to any other relief the court deems appropriate.[56]

As discussed above, the Taylors initially alleged Mr. Taylor was the victim of identity theft and did not take out the loan. However, the Taylors later withdrew this claim and admitted Mr. Taylor took out the loan. Accordingly, the Court need not decide this issue. The issues before the Court are thus: 1) whether NCSLT owned the loan in 2014 when it commenced the collection action; and 2) whether a Delaware statutory trust has standing to sue in Utah state court.

III. NCSLT Owned Mr. Taylor's Loan in 2014

The Court finds NCSLT owns Mr. Taylor's loan and owned it in 2014. The chronology and documentation of the loan purchase are set out below.

As discussed above, Mr. Taylor signed the credit agreement with Chase on November 28, 2006.[57] On December 7, 2006, Chase issued the check to Mr. Taylor for $30,000.[58] Mr. Taylor signed and deposited the check on or around December 12, 2006.[59]

---

[55] Defs.' Reply to Resp. to Mot. for Sanctions, ECF No. 120.

[56] Defs.' Mot. Summ. J., ECF No. 86.

[57] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A-1. The amount of the loan was for $30,000. Alex Taylor's name is on the credit agreement. Additionally, the credit agreement includes the last four digits of his social security number, an ID number, and his birth year. The note was signed on November 28, 2006.

[58] *Id.*, Ex. A-2.

[59] *Id.*, Ex. B.

On March 8, 2007, Chase sold Mr. Taylor's loan to NCSLT through a near simultaneous two-step process.[60] First, Chase sold Mr. Taylor's loan, along with a pool of other student loans, to National Collegiate Funding, LLC through a pool supplement agreement.[61] The pool supplement agreement states JP Morgan Chase "sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor") . . . each student loan set forth on the attached schedule 1."[62] The pool supplement agreement then states "The Depositor in turn will sell the Transferred Bank One Loans to The National Collegiate Student Loan Trust 2007-1 (the "Trust")."[63]

NCSLT submitted an excerpt from schedule 1 showing Mr. Taylor's loan was included in the pool supplement.[64] Critically, the excerpt includes the last four digits of Mr. Taylor's social security number and the same ID number he listed on his credit agreement.[65] Additionally, the Lender is listed as Chase Bank, the total net disbursed amount is for $30,000, and the disbursement date is December 7, 2006.[66]

Second, National Collegiate Funding, LLC, sold the loans to NCSLT through a deposit and sale agreement.[67] This second step occurred on the same day as the first step – March 8, 2007.[68] The Deposit and Sale Agreement states it is "between The National Collegiate Funding,

---

[60] Defs.' Mot. Summ. J., ECF No. 86.

[61] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A-3.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*, Ex. A-4.

[68] *Id.*

LLC, as seller, and the National Collegiate Student Loan Trust 2007-1, as purchaser . . ."[69] The deposit and sale agreement states that it is for the purchase and sale of the student loans listed on schedule 1 of the pool supplement agreement.[70] The agreement included the assignment of each of the loans in the pool supplement to the purchaser.[71]

Documents subpoenaed from Chase support the Court's finding that Chase sold the loans to NCSLT.[72] Specifically, the last page of Chase's document production includes a database entry with Mr. Taylor's name, the last four digits of his social security number, and the initial disbursement date of December 7, 2006.[73] The entry states Mr. Taylor's loan was closed and transferred off the system on March 8, 2007.[74] As noted above, March 8, 2007 was the date of the sale from Chase to NCSLT.[75] Additionally, Chase sent a letter to Mr. Taylor on August 16, 2018, in response to an inquiry from Mr. Taylor to the Consumer Financial Protection Bureau regarding his student loan account.[76] The letter stated, in relevant part, "American Education Services serviced this loan from December 7, 2006, the date of disbursement, through March 8,

---

[69] *Id.*

[70] *Id.* Article 1 states, "This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto."

[71] *Id.*. Article III states, "The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans." It then states, "The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all the Seller's rights and interest under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto." Schedule A lists the JP Morgan Chase Bank Pool Supplements dated March 8, 2007. Schedule B lists the JP Morgan Chase Bank loans that were originated under Bank One's Corporate Advantage Loan Program, and Campus One Loan Program dated May 1, 2002.

[72] Pls.' Disc. Mot., ECF No. 77, Ex. C.

[73] *Id.*

[74] *Id.*

[75] Defs.' Mot. Summ. J., ECF No. 86.

[76] Defs.' Exs. in Resp. to Req. from Ct., ECF No. 97, Ex. A.

2007, when we sold it to National Collegiate Trust . . . you must contact Transworld Systems, Inc. . . . for information about this loan"[77]

Given the evidence set out above, the Court finds NCSLT owns Mr. Taylor's loan and owned it in 2014. The Court will now turn to address Plaintiffs' additional arguments challenging the validity of the sale documentation and the foundation of NCSLT's evidence.

A. The TERI Guaranty Agreement

The Taylors argue NCSLT cannot prove assignment from Chase because a condition of the sale was never met – that The Education Resource Institute ("TERI") receive the original note endorsed to it.[78] To make this argument, the Taylors first look to the pool supplement agreement, which states the loans are made "on the condition that they qualify for and in fact are covered by a guaranty issued by The Education Resources Institute, Inc."[79] Second, the Taylors look to the TERI guaranty agreement, which states "TERI must have received from [JP Morgan Chase Bank] the original Promissory note, or a lost note affidavit or other acceptable and admissible evidence of the Loan, enforceable against the Borrower . . . endorsed to TERI in such manner as to transfer to TERI all rights in and title to such Promissory Note and Loan."[80] The Taylors then conclude that because NCSLT did not provide an original note to TERI, and it was not endorsed to TERI, NCSLT cannot prove it is a successor-in-interest to Chase.[81]

The Court finds this argument unconvincing. Section 2.2. of the TERI guaranty agreement, which the Taylors rely on the make this argument, is premised upon the occurrence

---

[77] *Id.*

[78] Pls.' Mot. Summ. J., ECF No. 90.

[79] *Id.* (citing the Note Purchase Agreement, ECF No. 91, Ex. M).

[80] *Id.*, Ex. K.

[81] ECF No. 90.

of a "guaranty event."[82] A guaranty event is defined by the agreement as any of the following events: "a) failure of the Borrower to make monthly principal and/or interest payments on a Loan when due, provided such failure persists for a period of one hundred fifty (150) consecutive days; b) the filing of a petition in bankruptcy with respect to the Borrower, or; c) the death of the Borrower."[83] However, at the time the loan was sold, Mr. Taylor had not defaulted or filed for bankruptcy.[84] Second, even if Mr. Taylor had defaulted prior to the sale of the loan, the failure of NCSLT to provide an original note to TERI would not void the sale of Mr. Taylor's loan. The TERI guaranty agreement states that TERI must have received "the original Promissory note, or a lost note affidavit or other acceptable and admissible evidence of the Loan."[85] Mr. Taylor's credit agreement states the faxed copy of the credit agreement is an original note.[86] Further, because the TERI agreement states TERI must have received the note or "other acceptable and admissible evidence of the loan," TERI did not need to receive the original loan note for the guaranty to come into effect. Defendants argue that because Mr. Taylor's loan was not in default

---

[82] Pls.' App. Exs. To Pls.' Mot. Summ. J., ECF No. 91, Ex. K. Section 2 is titled "Guarantee of Loans." Section 2.1 states, in relevant part, "TERI hereby guarantees to Bank One, unconditionally except as set forth in Section 2.2 below, the payment of 100% of the principal of and accrued interest on every Loan as to which a Guaranty Event has occurred."

[83] Pls.' App. Exs. To Pls.' Mot. Summ. J., ECF No. 91, Ex. K.

[84] The parties dispute the date of default. As discussed above, a guaranty event is defined as a default, filing for bankruptcy or death. Pls.' App. Exs. To Pls.' Mot. Summ. J., ECF No. 91, Ex. K. The Taylors argue the loan defaulted on June 6, 2007, and charged off on October 4, 2007. Pls.' Resp. to Pls.' Mot. Summ. J., ECF No. 106. This argument assumes NCSLT had knowledge Mr. Taylor did not attend or was no longer attending school. NCSLT states the loan charged off without any payments on September 1, 2010. Defs.' Mot. Summ. J., ECF No. 86. Even assuming arguendo the Taylors are correct about the date of default, it still occurred after the sale date of March 8, 2007.

[85] Pls.' Summ. J. Exs., ECF No. 91, Ex. K.

[86] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A-1. Paragraph 15 of the Credit Agreement states: "If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will refax the first page upon request by Lender . . . If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement."

at the time of the sale, "plaintiffs' argument that there was not a 'note' endorsed by Chase to TERI produced is irrelevant."[87] The Court agrees.

B. Business Records

The Taylors argue Defendants' evidence of the sale is inadmissible because Defendants have not met the criteria of the business records exception[88] under Federal Rule of Evidence 803(6).[89] Specifically, the Taylors argue Defendants cannot produce a percipient witness to the creation of schedule 1 and cannot satisfy the requirements of Rule 803(6)(A) – that the record was made by someone with knowledge.[90]

However, Rule 803(6) does not require a party introducing evidence of business records to produce a witness to the creation of such records.[91] Rather, the rule requires the party introducing the records to lay a sufficient foundation by showing that it was the regular practice to base such records upon a transmission from a person with knowledge.[92] As the advisory committee stated:

> It is the understanding of the committee that the use of the phrase "person with knowledge" is not intended to imply that the party seeking to introduce the memorandum, report, record, or data compilation must be able to produce, or even identify, the specific individual upon whose first-hand knowledge the memorandum, report, record or data compilation was based. A sufficient

---

[87] Defs.' Resp. to Pls.' Mot. Summ. J., ECF No. 116.

[88] The business records exception states: The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).

[89] Pls.' Mot. Summ. J., ECF No. 90.

[90] *Id.*

[91] Fed. R. Evid. 803(6) advisory committee's note to 1974 amendment.

[92] *Id.*

foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such memorandums, reports, records, or data compilations upon a transmission from a person with knowledge . . . In short, the scope of the phrase "person with knowledge" is meant to be coterminous with the custodian of the evidence or other qualified witness. Fed. R. Evid. 803 advisory committee's note to 1974 amendment.

The Court finds Defendants laid a sufficient foundation to introduce the business records. The Taylors insist Defendants' custodian of records, Mr. Bradley Luke, is not qualified to introduce the records because he was not a witness to the creation of them.[93] Defendants identified Mr. Luke as their custodian of records in their first amended initial disclosures.[94] Mr. Luke testified through affidavit that he is the designated records custodian for NCSLT, that TSI is the designated records custodian of Mr. Taylor's loan, that Mr. Luke had personal knowledge of the business records maintained by TSI, and that the student loan records were "created, compiled and recorded as part of a regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge."[95] Accordingly, Mr. Luke's testimony satisfies the requirements of Rule 803(6), and NCSLT's evidence of schedule 1 is admissible.

C. Schedule 1

Plaintiffs further argue the schedule 1 excerpt produced by Defendants cannot be trusted.[96] Specifically, Plaintiffs argue Defendants cannot prove the excerpt came from schedule 1 because Defendants did not produce the entire schedule.[97] Defendants state the entire schedule

---

[93] Pls.' Mot. Summ. J., ECF No. 90.

[94] *Id.*, Ex. C-1.

[95] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A.

[96] Pls.' Mot. Summ. J., ECF No. 90.

[97] *Id.*

15

1 contains the private information of thousands of students not necessary to a determination regarding Mr. Taylor's loan in this case.[98] The Court held a discovery conference on September 17, 2019 regarding schedule 1 and ordered NCSLT to turn over the metadata to schedule 1, but not the entire schedule.[99] Defendants produced the metadata.[100]

Mr. Luke's affidavit states the schedule 1 excerpt "was taken directly from the full schedule and the substance has not been altered in any way."[101] The Court notes Defendants identified Mr. Luke as the custodian of records early in litigation, but Plaintiffs did not depose him.[102] Nor did Plaintiffs protest the metadata as inadequate until nearly six months after Defendants produced it.[103] Based on the affidavit of Mr. Luke, the Court finds Defendants' production of the schedule 1 excerpt was sufficient to prove Mr. Taylor's loan was part of the pool sold to NCSLT.

---

[98] Defs.' Resp. to Defs.' Mot. Summ. J., ECF No. 116.

[99] Order Requiring Produc. of Schedule 1 Metadata, ECF No. 55. "Defendants shall within ten (10) days of September 17, 2019 produce the metadata for Schedule 1 referred to in the 2007-1 Pool Supplement Agreement, JP Morgan Chase Bank, N.A., Defendants' document number 150795_7028-001_POOL."

[100] Hr'g Tr., May 14, 2020, (Mr. Alltmont: To be clear, we have not withheld Schedule 1, we have produced it. We produced an excerpt from Schedule 1 relating only to Plaintiff's loan. And in September of last year, we came before you on a motion to compel the Plaintiff wanted then exactly what he is asking for now which is a full copy of the schedule. And we raised our hand and said, Your Honor, that has thousands of loans on it, a lot of consumer information, and we have provided him the relevant piece of the document. Ultimately, he backed off and settled on the metadata from the document. We produced it pursuant to the guidelines that were available online from Microsoft on how to extract that data. We produced to them a copy of the steps we took which came right from Microsoft. And in September, in October, in November, in December we heard no dispute about that production.").

[101] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. A. Transcript from July 10, 2020 hearing: Mr. Alltmont: "We offered to bring Mr. Luke to the Court with a full copy of Schedule 1 for an in camera review so that the Court could see that the excerpt was an exact extraction from the actual Schedule 1."

[102] Defs.' Resp. to Defs.' Mot. Summ. J., ECF No. 116.

[103] Defendants produced the metadata in September of 2019. *See* Hr'g Tr., May 14, 2020, *supra* note 106. Plaintiffs filed a discovery motion regarding the alleged inadequacy of the metadata on March 9, 2020. Pls.' Short Form Disc. Mot., ECF No. 77.

D. Conclusion

In conclusion, the Court finds NSCLT owned Mr. Taylor's loan when it commenced the

2014 collection action. The Taylors' challenges to the sufficiency and foundation of NCSLT's

evidence of the loan sale are futile. NCSLT showed through conclusive documentation the steps

of the loan sale, from the origination of the loan between Mr. Taylor and Chase, to the sale from

Chase to NCSLT in 2007. As such, NCSLT had standing when it brought the collection action

against Mr. Taylor in 2014.

IV. NCSLT had standing to bring the 2014 collection action as a Delaware Statutory Trust

As discussed above, the Taylors argue for the first time in their motion for summary

judgment that NCSLT plead itself out of court by bringing the 2014 state court action as a

statutory trust, instead of as the trustee or beneficiary of a trust.[104] Utah law does not recognize

the independent existence of a trust outside of its trustee or trust beneficiaries, the Taylors argue,

and thus, a foreign statutory trust did not have standing to file a claim in Utah state court.[105] The

argument follows that without standing, a court cannot have subject matter jurisdiction, and

because a challenge to subject matter jurisdiction can be brought at any time, the 2014 default

judgment is void.[106]

First, NCSLT argues the Taylors' arguments on this issue are barred by *res judicata*,

were waived, and are otherwise meritless.[107] Even if the arguments are not barred, NCSLT

counters that as a Delaware statutory trust, it had the capacity and standing to sue in its own

---

[104] Pls.' Mot. Summ. J., ECF No. 90.

[105] *Id.*

[106] *Id.*

[107] Pls.' Reply to Pls.' Mot. Summ. J., ECF No. 133.

17

name.[108] Specifically, NCSLT states it was established under a specialized Delaware law that allows for the creation of statutory trusts that are separate legal entities.[109] Further, NCSLT argues the Taylors confuse standing with legal capacity.[110]

Additionally, the Taylors raised for the first time in their reply motion that NCSLT should have registered as a Utah Business trust to have standing to sue in Utah state court.[111] NCSLT argues Utah courts routinely recognize business trusts that have sued in their own name.[112] To support this proposition, NCSLT cites to case law where the Plaintiff was a registered Utah Business Trust, or where the defendant was a foreign statutory or business trust.[113] Because the Utah Business Trust code states a business trust can be sued whether or not it is registered under the chapter,[114] cases of foreign business trusts sued in Utah are inapposite. NCSLT has not cited to case law where a foreign statutory trust brought suit in Utah state court, except for a sole case from 1967, *Bennett Association v. Utah State Tax Commission*.[115] While in *Bennett*, the plaintiff was a Massachusetts business trust, the case occurred nearly 30 years prior

---

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] Pls.' Reply to Pls.' Mot. Summ. J., ECF No. 126.

[112] Pls.' Reply to Pls.' Mot. Summ. J., ECF No. 133.

[113] *Merrick Young Inc. v. Wal-Mart Real Estate Bus. Tr.*, 257 P.3d 1031, 1032 (Utah Ct. App. 2011); *Crestwood Cove Apartments Bus. Tr. v. Turner*, 164 P.3d 1247, 1255 (Utah 2007) (Crestwood Cove was a Utah Business Trust); *Bennett Ass'n v. Utah State Tax Comm'n*, 426 P.2d 812, 813 (Utah 1967) (stating that business trust was taxable as a corporation).

[114] "A business trust may be sued whether or not the business trust is registered under this chapter." Utah Code Ann. § 16-15-106.

[115] Pls.' Reply to Pls.' Mot. Summ. J., ECF No. 133, (citing *Bennett Ass'n v. Utah State Tax Comm'n*, 426 P.2d 812, 813 (Utah 1967)). In *Bennett*, the Plaintiff was a Massachusetts business trust. *Id.* The case is a Utah Supreme Court case, and the opinion does not discuss Plaintiff's standing as a foreign business trust. *Id.* The Court could infer from *Bennett* that foreign business trusts have standing in Utah state courts. However, because the Utah Business Trust Registration Act was originally enacted in 1995, nearly 30 years after *Bennett*, the Court will not make this inference.

to the enactment of the Utah Business Trust Registration Act and it is not clear whether standing was ever raised in that case. The Court finds the Taylors' new arguments were waived and are meritless.

A. Waiver

The Court finds the Taylors waived the above arguments. The Taylors' arguments are more properly characterized as legal capacity arguments rather than as standing arguments. Utah Rule of Civil Procedure 9 states "Except when required to show that the court has jurisdiction, a pleading need not allege: (a) a party's capacity to sue or be sued." The rule further states, "[t]o raise any of those issues, a party must do so by a specific denial . . ." Utah R. Civ. P. 9(a)(2). Even when a party appears, a failure to raise a specific negative averment of lack of capacity waives the argument. *See Phillips v. JCM Dev. Corp.*, 666 P.2d 876, 884 (Utah 1983). As discussed above, Mr. Taylor did not appear. His failure to appear and raise the issue of NCSLT's legal capacity thus waived it.

The Taylors argue that because NCSLT could not sue in Utah, the Utah courts could not remedy NCSLT's complaint, and thus NCSLT did not have standing.[116] Again, they argue this lack of standing deprives the court of subject matter jurisdiction, and challenges to subject matter jurisdiction can be brought at any time. However, "standing is not the same as legal capacity to sue." *Elite Legacy Corp. v. Schvaneveldt*, 391 P.3d 222, 234 (Utah Ct. App. 2016) (citation omitted). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* (citation omitted). The Taylors'

---

[116] Standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (citation omitted).

arguments regarding standing on this point are in fact challenges to NCSLT's legal capacity. As such, the arguments were waived for the reasons discussed above.

Additionally, as explained below, the Court finds the Taylors' new arguments unavailing. Because the Court requested additional briefing on these arguments, the Court will now turn to address the merits.

## B. NCSLT had legal capacity and standing to bring the 2014 collection action in its own name

NCSLT is a Delaware statutory trust and is authorized to sue and be sued pursuant to the Delaware statute under which it was created.[117] While Utah courts have not directly ruled on the issue, several courts outside Utah recognize the standing and legal capacity of Delaware statutory trusts to sue in their own names.[118] The Taylors argue Utah does not recognize the independent existence of a trust outside of the trustee or the trust's beneficiaries.[119] But Utah law allows for the creation of business trusts under the Utah Business Trust Registration Act, which are permitted to sue in their own name.[120] This leads the Taylors to their next argument raised in

---

[117] Del. Code Ann. tit. 12, § 3804. "A statutory trust may sue and be sued." The Trust Agreement states it is a statutory trust under the Delaware Statutory Trust Act. Pls.' Mem. in Opp'n to Defs.' Mot. to Strike, ECF No. 131, Ex. 2, Trust Agreement and Declaration of Trust.

[118] *See, e.g., Kwang Kim v. Wilmington Tr. Co.*, 2018 WL 4296983, *7-8 (S.D. Cal. Sept. 7, 2018) ("the NCSL Trust is a Delaware statutory trust. As such, the NCSL Trust has the capacity to sue or be sued as a separate legal entity."); *Foster v. Nat'l Collegiate Student Loan Trust 2007-4*, 2018 WL 1095760, *1, n.1 (Tex. App. Mar. 1, 2018) ("A statutory trust is a juridical entity, separate from its trustee and beneficial owners, that may sue and be sued, own property, and transact business in its own name."); *In re Countrywide Fin. Corp. Mortgage-backed Sec. Litig.*, 2014 WL 4162382, *10 (C.D. Cal. 2014) ("a statutory trust formed under the laws of Delaware, exists separately from the parent and 'may sue and be sued.'"); *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat. Ass'n*, 2015 WL 2359295, *4 (S.D. N.Y. May 18, 2015) ("These trusts are statutorily empowered to sue and be sued in their own right[.]"); *Dargahi v. Hymas*, 2008 WL 8586675, *4 (S.D. N.Y. Oct. 15, 2008) ("The trust is 'subject to attachment and execution as if it were a corporation.'").

[119] Pls.' Mot. Summ. J., ECF No. 90.

[120] Utah Code Ann. § 16-15-106.

their reply memorandum, which apparently concedes that trusts may sue in their own name – that NCSLT should have registered as a Utah Business Trust prior to bringing suit in Utah.[121]

### C. NCSLT is not a Utah Business Trust and did not need to register as one to bring suit in Utah

The Taylors argue NCSLT should have registered as a Utah Business Trust and that without such registration, NCSLT was barred from bringing suit in Utah, thus depriving it of standing.[122] The Taylors cite to the Utah Business Trust Registration Act ("UBTRA") subsection on business trusts powers, which states: "(1) A business trust registered under this chapter may in its trust name: (a) sue . . . (2)(a) A business trust may not maintain any action, suit, or proceeding in this state unless the business trust is registered under this chapter." Utah Code Ann. § 16-15-106.

The Utah Rules of Civil Procedure do not specify whether a foreign business trust must register in the state prior to bringing suit. *See* Utah R. Civ. P. 17. The rules make no mention of business trusts, domestic or foreign. *See id.* Further, this Court found no Utah case law discussing whether foreign business trusts must register under the UBTRA prior to bringing suit in Utah. The Court finds the UBTRA specifically exempts foreign business trusts from registration when engaged in activities in Utah solely to fulfill their duties as a trustee in another state. Further, the Court finds NCSLT does not fit within the definition of a Utah business trust because it does not transfer property to a trustee and does not transact business within Utah.

---

[121] Pls.' Reply to Pls.' Mot. Summ. J., ECF No. 126.

[122] *Id.*

i) The statute does not apply to a foreign business trust bringing suit in Utah solely to enforce its duties as a trustee in another state

A review of the UBTRA is instructive here. Section 102 of the Act, titled "Definition of business trust," states that "[b]usiness trust has the same meaning as in Section 7-5-1" of Utah's Financial Institutions Act. Utah Code Ann. § 16-15-102. Utah's Financial Institutions Act defines "business trust" as "an entity engaged in a trade or business that is created by a declaration of trust that transfers property to trustees, to be held and managed by them for the benefit of persons holding certificates representing the beneficial interest in the trust estate and assets." Utah Code Ann. § 7-5-1(1)(a). Most important, the section defining business trusts states, "[t]he requirements of this chapter do not apply to . . . an institution authorized to engage in a trust business in another state that is engaged in trust activities in this state solely to fulfill its duties as a trustee of a trust created and administered in another state." Utah Code Ann. § 7-5-1(3)(a).

Indeed, NCSLT is a business trust authorized to engage in trust business in Delaware.[123] Its sole reasons for engaging in trust activities in Utah was to secure its rights to a contractual obligation with Mr. Taylor. As such, the UBTRA does not apply to NCSLT by virtue of the Act's reference to the definition of business trust in the Utah Financial Institutions Act. Additionally, the Court finds NCSLT does not fall within the definition of a Utah business trust because it does not transfer property to a trustee and does not conduct business within Utah.

---

[123] Defs.' Surreply, ECF No. 133.

<u>ii) NCSLT does not fall within the definition of a Utah Business Trust</u>

First, NCSLT argues it is not a business trust under Utah law because it does not transfer property to a trustee.[124] Delaware's Statutory Trust Act, under which NCSLT is registered, defines a statutory trust as an unincorporated association which: "Is created by a governing instrument under which property is or will be held, managed, administered, controlled, invested, reinvested and/or operated, or business or professional activities for profit are carried on or will be carried on . . ." Del. Code Ann. tit. 12, § 3801.

The Delaware code does not mention transferring property as a function of the trust, as opposed to Utah's definition of a business trust. NCSLT's Trust Agreement comports with these requirements. The Trust Agreement vests legal title to the trust property in the trust as a separate legal entity unless the law requires title to vest in the Owner Trustee.[125]

Second, the Court finds NCSLT is not engaged in a trade or business in Utah. The UBTRA does not define trust business. *See* Utah Code Ann. § 16-15-101–110. But the Act does require a business trust to register before doing business in Utah. Utah Code Ann. § 16-15-104. Further, the Act requires the certificate of registration to set forth "the business purpose for which the business trust is organized." *Id.* Utah's Financial Institutions Act defines "trust business" as "[A] business in which one acts in any agency or fiduciary capacity, including that of personal representative, executor, administrator, conservator, guardian, assignee, receiver, depositary, or trustee under appointment as trustee for any purpose permitted by law . . ." Utah Code Ann. § 7-5-1(b).

---

[124] *Id.*

[125] Pls.' Opp's Mem. To Defs.' Mot. to Strike, ECF 131, Ex. 2, Trust Agreement and Declaration of Trust. NCSLT's Trust Agreement states in section 2.05 "The Owner Trustee hereby declares that it will hold the Trust Property in trust upon and subject to the conditions set forth herein for the use and benefit of the Owners." Section 14.02 states: "Legal title to all Trust Property shall be vested at all times in the Trust as a separate legal entity."

23

Both the UBTRA and the Utah Financial Institutions Act are premised on the business activity taking place in Utah. Utah Code Ann. § 16-15-104 ("A business trust shall register with the division before doing business in the state.") The Taylors argue NCSLT is in the business of suing on defaulted student loans.[126] But bringing suit to enforce a debt obligation is not transacting business under Utah law.[127] *See Gen. Motors Acceptance Corp. v. Lund*, 208 P. 502, 503 (Utah 1922) ("Filing suit within the courts of this state to recover an indebtedness or to enforce an obligation is not "doing business" within the meaning of the statute. This court has so held in at least three cases.") (interpreting corporations code); *George R. Barse Live-Stock Comm'n Co. v. Range Valley Cattle Co.*, 50 P. 630, ¶1 (Utah 1897) ("The bringing of a suit by a foreign corporation to secure its legal rights, under the circumstances shown in this case, is not 'doing business,' within the constitution or laws of this state."). Utah's Revised Business Corporations Act states: "The following, nonexhaustive list of activities does not constitute 'transacting business' . . . maintaining, defending, or settling in its own behalf any legal proceeding." Utah Code Ann. § 16-10a-1501.

iii. Conclusion

Because NCSLT does not transfer property to a trustee and is not engaged in a business or trade in Utah, it is not a Utah Business Trust and did not need to register as one prior to bringing suit in Utah. It is unclear if, in assessing legal capacity, Utah state courts would treat foreign statutory trusts as foreign corporations, unincorporated associations, or recognize their status under Delaware law as a separate legal entity. As noted above, the Delaware code defines

---

[126] Pls.' Reply to Defs.' Surreply, ECF No. 134.

[127] As this Court found no case law interpreting the Utah Business Trust Registration Act's definition of "trust business," case law interpreting the corporations code is persuasive here.

a Delaware Statutory trust as an "unincorporated association."[128] Utah law recognizes that an unincorporated association may sue and be sued in its own name.[129]

Whether a foreign statutory trust would be recognized as a separate legal entity, treated as a foreign corporation, or as an unincorporated association, in any case it would only be required to register in the state if it was conducting business in the state.[130] And as discussed above, the corporations code specifically excludes bringing suit from an activity that requires foreign corporations to register in the state. Utah Code Ann. § 16-10a-1501. Additionally, under the Assumed Name Statute, an unincorporated association's failure to register would not bar the plaintiff from bringing suit, because the applicable statute allows the plaintiff to cure the defect through registration.[131]

In sum, NCSLT does not conduct business in the state of Utah, and as such it did not need to register as a Utah Business Trust, foreign corporation, unincorporated association, or otherwise. NCSLT brought suit in its own name to enforce its contractual rights with Mr. Taylor. This is exactly the kind of action that was contemplated by the drafters of the UBTRA when they, by reference, excluded this activity from the definition of trust business. As such, the Taylors' arguments that NCSLT did not have standing, either because Utah does not recognize

---

[128] "'Statutory trust' means an unincorporated association . . ." Del. Code Ann. tit. 12, § 3801 (West).

[129] "When two or more persons associated in any business either as a joint-stock company, a partnership or other association, not a corporation, transact such business under a common name, whether it comprises the names of such associates or not, they may sue or be sued by such common name." Utah R. Civ. P. 17(d).

[130] *Graham v. Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.*, 1999 UT App 136, ¶ 13, 979 P.2d 363, 369 (finding an unincorporated association doing business in Utah must register under the assumed name statute to file suit, but that a failure to register prior to suit can be cured.). *Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1392 (Utah 1996) (Discussing Utah Rule of Civil Procedure 17(d): "Clearly the rule contemplates two factors: (i) parties transacting business, and (ii) transacting such business *under a common name*.")

[131] *See Graham v. Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.*, 979 P.2d 363, 369 (Rejecting argument that failing to register under Assumed Name Statute deprived court of jurisdiction and holding that Plaintiff could cure deficiencies in complaint by registering under the statute.).

Delaware statutory trusts' independent legal existence, or because NCSLT should have registered as a Utah Business Trust, are meritless. NCSLT had legal capacity and standing when it brought suit in 2014.

CONCLUSION

The Court finds NCSLT owns the loan and owned it in 2014, Mr. Taylor owes on the loan, and NCSLT had legal capacity and standing to bring suit in Utah in its own name. The Court thus DENIES the Taylors' Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED this **22** day of February, 2021.

Bruce S. Jenkins
United States Senior District Judge

26