FILED
2021 MAR 9 AM 10:19
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TAYLOR ET AL,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1 ET AL,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS**<br><br><br>Case No. 2:19-CV-00120-BSJ<br><br>District Judge Bruce S. Jenkins |

This matter came before the Court on May 14, 2020. Mr. Ronald Ady appeared on behalf of Plaintiffs Alex and Nallely Taylor ("the Taylors"). Mr. Michael Alltmont appeared on behalf of Defendants National Collegiate Student Loan Trust 2007-1, Transworld Systems, and EGS Financial Care ("Defendants"). The Court reserved on the matter and ordered Defendants to submit documentation of their requested legal fees.[1]

Having considered the parties' briefs, the evidence presented, the arguments of counsel, and the relevant law, the Court hereby GRANTS in part and DENIES in part Defendants' Motion for Sanctions against Plaintiff Mr. Taylor and by way of sanction awards attorney's fees in the amount of $37,725.37.

---

[1] Defendants submitted the requested documentation on May 22, 2020. ECF No. 104. Plaintiffs submitted an opposition memorandum on June 19, 2020. ECF No. 117. Defendants submitted a reply in further support of their request for attorney's fees on June 26, 2020. ECF No. 121.

## BACKGROUND

The history of this case is laid out in the Court's order denying summary judgment to Plaintiffs and granting summary judgment to Defendants.[2] The Court will not repeat each fact here, but will briefly summarize.

In 2014, Defendants brought a collection action in Utah state court against Mr. Taylor regarding a $30,000 student loan he owed. Mr. Taylor did not appear, and a default judgment was entered against him in 2015. Mr. Taylor did not appeal.

The present lawsuit seeks to set the default judgment aside. It is premised upon two main contentions: 1) Mr. Taylor was the victim of identity theft and did not owe the student loan, and 2) Defendants could not prove they owned the loan when the state action was brought. The Taylors argued either of these contentions, if proved, destroyed Defendants' standing when Defendants brought the 2014 collection action and thus the state default judgment was void.

After nearly a year of litigation in this case, the Taylors moved to amend their complaint. The proposed amendment plead new facts wholly inconsistent with Mr. Taylor's claim of identity theft – that Mr. Taylor filed for bankruptcy in 2009 and listed the subject student loan as undisputed on his creditor's matrix. At the hearing on the Motion to Amend, the Court inquired into these contradictory factual allegations, at which point Mr. Ady conceded that Mr. Taylor did in fact take out the student loan in 2006.

Defendants moved for sanctions and argued Mr. Taylor deliberately misled this Court for over a year.[3] Mr. Taylor knew he took out the loan, Defendants argued, and yet he brought this lawsuit premised in part upon a false claim.[4] Defendants ask this Court to sanction Mr. Taylor

---

[2] *See* ECF No. 136.

[3] Defs.' Mot. for Sanctions, ECF No. 64.

[4] *Id.*

2

for deliberately, repeatedly, and falsely asserting he was the victim of identity theft, despite knowing that he applied for the loan and received the funds in 2006 and failed to use them for the claimed schooling.[5] As a sanction for bad faith conduct, Defendants asked this Court to dismiss the case *sua sponte* and to award attorney's fees for time spent litigating the false identity theft claim.[6] The Court, however, did not dismiss the case *sua sponte*, but ruled after an extended hearing on summary judgment.[7] The Court will award attorney's fees by way of sanction as discussed below.

## DISCUSSION

Courts of justice are vested, by their very creation, with certain inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). These powers "cannot be dispensed with . . . because they are necessary to the exercise of all others." *Id.* (citation omitted). Such authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

A court's inherent power includes the power to sanction parties for bad faith conduct. *Id.* "[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45–46 (citation omitted). As such, "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party . . . as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Id.* at 46 (citations omitted).

---

[5] *Id.*
[6] *Id.*
[7] ECF No. 136.

3

While the Court ordinarily should rely on §1927, Rule 11, or other Federal Rules of Procedure to award attorney's fees for bad faith conduct, "the court may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." *Chambers*, 501 U.S. at 33. The Court finds § 1927, Rule 11, and the other Federal Rules of Procedure are inadequate to sanction Mr. Taylor for his bad faith conduct throughout this case.

First, Defendants did not move under §1927.[8] Further, §1927 only applies to sanction attorneys who unreasonably and vexatiously multiply proceedings.[9] However, Defendants moved to sanction Mr. Taylor for knowingly bringing a false claim.[10] Defendants have not alleged Mr. Ady unreasonably and vexatiously multiplied proceedings.[11]

Second, Defendants moved under Utah code sections 78B-5-825 and 78B-5-826, and alternatively asked the Court to use its inherent power to sanction Mr. Taylor. However, the Tenth Circuit has explained that in diversity cases, fees that are based on a litigant's bad faith conduct are procedural fees and are thus governed by the federal rules. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460–61 (10th Cir. 2017) (citation omitted). Thus, the two Utah statutes Defendants moved under are inappropriate to justify the sanction to Mr. Taylor for bad faith.

Third, Plaintiffs argue Defendants must move under Rule 11 and argue post hac that if Defendants had advised them of the contradictory nature of the identity theft claims under the safe harbor provision of Rule 11, they would have withdrawn those claims earlier.[12] The Court is

---

[8] *See* Defs.' Mot. for Sanctions, ECF No. 64.

[9] 28 U.S.C. § 1927.

[10] Defs.' Mot. for Sanctions, ECF No. 64.

[11] *See Id.*

[12] Pls.' Response to Defs.'Attn'y Fees Submission, ECF No. 117.

4

not convinced. Mr. Taylor's contradictory factual allegations were the subject of his Motion to Amend.[13] Defendants pointed out the factual incongruities in their opposition to the Motion to Amend.[14] But following Defendants' opposition, Plaintiffs did not remove the allegations of identity theft from the Proposed Second Amended Complaint ("SAC"), nor did they address Defendants' argument in their reply memorandum.[15] Rather, it was only when the Court directly questioned Mr. Ady during the hearing on the Motion to Amend that Mr. Ady conceded Mr. Taylor took out the student loan in question.[16]

While Rule 11 permits the Court to move on its own to sanction a party, the Court may not award monetary sanctions on its own, unless it issued a show-cause order to Mr. Taylor under Rule 11(c)(3). Fed. R. Civ. P. 11(5)(B). Finally, any monetary sanctions the Court imposes on its own motion cannot be awarded to Defendants, but rather would be paid into Court. *Wright v. CompGeeks.com*, 429 F. App'x 693, 697–98 (10th Cir. 2011), ("[W]e stated that this rule 'prohibits a court acting on its own initiative from ordering payment of a monetary penalty to an opposing party.'") Defendants exerted much time and effort in this case contesting Mr. Taylor's identity theft claims and should be compensated for that time and effort. Accordingly, Rule 11 is not an appropriate rule under which to issue sanctions. As such, the Court will exercise its inherent power to sanction Mr. Taylor and will do so in the form of attorney's fees.

---

[13] Pls.' Mot. to Amend First Am. Compl., ECF No. 43.

[14] Defs.' Opp'n to Pls.' Mot. to Amend, ECF No. 48. Defendants stated on the first page of the opposition and the first sentence of the introduction, "Plaintiffs have asserted throughout this litigation that they never incurred the subject student loan, but they now seek to add new and contradictory allegations that the debt was discharged in bankruptcy in a proposed Second Amended Complaint."

[15] *See* Pls.' Reply Mem. in Supp. of Mot. to Amend Second Am. Compl., ECF No. 54.

[16] Hr'g Tr., Jan 6, 2020: (The Court: "[H]asn't he asserted in his pleadings that he's not the guy?"; Mr. Ady: "He has."; The Court: "But yet, in 2009, in an uncontested listing in his schedules, he shows them as creditor, is what you tell me, uncontested. Now he's either the guy or he isn't the guy."; Mr. Ady: "I would have to say that he's the guy. I think our position here on this motion is he is the guy.").

Bad Faith Conduct

The Court finds Mr. Taylor acted in bad faith throughout the course of this litigation. Mr. Ady conceded at the hearing on the Motion to Amend that Mr. Taylor took out the $30,000 student loan.[17] Yet at the outset of litigation, Mr. Taylor's allegations of identity theft permeated the Taylors' Amended Complaint ("Complaint").[18] As explained in this Court's order on summary judgment, the Taylors' claims of identity theft underpinned each of the eight causes of action they brought against Defendants.[19] The Taylors alleged Defendants knew the loan was fraudulent and yet were attempting to collect on the debt despite this knowledge.[20]

When the Taylors moved to amend the complaint, these allegations were not removed from the proposed SAC.[21] Nor were the frequency of allegations reduced.[22] The Taylors argued in their opposition that the mention of identity fraud in the proposed SAC was merely a mistake.[23] But the Taylors did not explain how they made this mistake.[24] Nor did they explain how such a mistake would be so often repeated throughout the proposed SAC.[25]

---

[17] *See* Hr'g Tr., *supra* note 8.

[18] The Taylors amended the complaint once as of right prior to serving it on Defendants. Am. Compl., ECF No. 8.

[19] ECF No. 136.

[20] Am. Compl., ECF No. 8.

[21] *See* Proposed Second Am. Compl., ECF No. 43, Exhibit A.

[22] Defendants argue the allegations of identity theft in the First Amended Complaint count seventeen times, whereas the allegations in the Proposed Second Amended Complaint count were alleged an additional sixteen times. Defs.' Mot. for Sanctions, ECF No. 64.

[23] Pls.' Opp'n to Mot. for Sanctions, ECF No. 72. "And although the Plaintiffs did mistakenly plead in their proposed SAC the inconsistent claims that Alex Taylor discharged his student loan obligation in bankruptcy and that he was the victim of identity theft, the inconsistent identity theft claim was not contested by the Defendants in their opposition to Plaintiffs' Motion to Amend." As discussed above, Defendants' first point in their opposition to the Motion to Amend was the inconsistent claim of identity fraud.

[24] *See Id.*

[25] *See Id.*

6

At the hearing on the Motion to Amend, Mr. Ady stated the basis for the identity theft claim was a letter Mr. Taylor received from AES stating that the Taylor loan was fraudulent.[26] The AES letter was addressed to Mr. Taylor, dated March 18, 2014, and states, in relevant part, "After performing a fraud investigation, it was determined that fraud or forgery was associated with the loan(s) listed in the Loan information section on the reverse side of this letter."[27] The letter goes on to state, "Our servicing records have been updated accordingly and your name has been placed in a history status and you are no longer considered responsible for this loan debt."[28] Critically, the reverse side of the letter lists the loan information, and lists the original balance of the loan as $22,099.45, and the current balance as $34,648.38.[29] The letter lists the disbursement date as December 11, 2006.[30] However, the loan at issue in this case was for an original principal balance of $33,519.55, and was disbursed on December 7, 2006.[31] At the hearing on the Motion for Sanctions, Mr. Ady stated, "There were two loans and it wasn't clear whether the loans were part and parcel of the same transaction at the time."[32]

Towards the outset of litigation, Mr. Ady and Mr. Alltmont corresponded via email about the two different loans on March 15, 2019.[33] Mr. Alltmont wrote to Mr. Ady, in relevant part, regarding the two loans, "[O]ne which Mr. Taylor is the borrower and one which Mr. Taylor is

---

[26] Hr'g Tr. Jan. 6, 2020: (The Court: "Why is he then telling me he's not the guy?" Mr. Ady: "Because in August of 2018, he got a letter from American Educational Services, and we have the letter. It said that the loan was obtained as a result of fraud, and until we got document and initial disclosures from the defendants in this case, we didn't realize that – or at least, there were two loans, two student loans that were issued to Taylor at the same time.").

[27] ECF 98, Exhibit 1.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Defs.' Mot. Summ. J. App'x, ECF No. 87, Ex. E-3. The $33,519.55 includes the principal $30,000 loan and the associated fees.

[32] Hr'g Tr., May 14, 2020.

[33] ECF No. 64, Exhibit C.

7

the co-borrower."[34] Mr. Alltmont continued, "The subject AES letter concerns a loan disbursed 12/11/06 with a balance of $22,099.45. However, the loan you a filing suit about was disbursed 12/7/06 with a balance of $33,519.55. The AES letter does not concern the loan made the subject of the instant lawsuit."[35] Despite this, the allegations of identity fraud regarding the $30,000 loan were not withdrawn nor were they removed from the proposed SAC.[36] However, while the complaint contained references to the AES letter, these references were removed from the proposed SAC.[37]

The Court is not convinced the AES letter formed a reasonable basis for the Taylors to bring one of their two main claims in this case – that Mr. Taylor was the victim of identity fraud, that Defendants knew the loan was fraudulent, and Defendants were collecting on the loan despite this knowledge. Mr. Taylor acknowledged he took out the loan.[38] As explained in this Court's order on summary judgment, Mr. Taylor signed the loan, received the $30,000 check from JP Morgan Chase, and deposited the proceeds in his account.[39] After the Utah state court entered a default judgment against Mr. Taylor in 2015, Mr. Taylor sought to have the judgment set aside by filing a motion to dismiss in Utah state court averring the judgment had been satisfied.[40] Defendants objected because the judgment had not been satisfied, and the Utah state court denied the motion to dismiss.[41]

---

[34] *Id.*

[35] *Id.*

[36] *See* ECF No. 43, Exhibit A.

[37] *Compare* First Am. Compl., ECF No. 8, *with* Proposed Second Am. Compl., ECF No. 43, Ex. A.

[38] Hr'g Tr., Jan. 6, 2020; Notice of Withdrawal of Pls.' Non Est Factum Claims, ECF No. 129.

[39] ECF No. 136.

[40] Defs.' Mot. Summ. J. App., ECF No. 87, Ex. E-8. Mr. Taylor filed the motion to dismiss on April 5, 2016.

[41] *Id.*, Ex. E-9; Hr'g Tr., May 14, 2020: (Mr. Alltmont: "On April 5th, 2016, Mr. Taylor, acting pro se, moved to dismiss the trial court saying that the claim had been fully settled. He declared that under penalty under Utah Code 78D-5-705. That motion was denied when NCT's counsel said that was untrue.").

Mr. Taylor's continuing allegations of identity fraud were not harmless. As Mr. Ady stated at the hearing for sanctions, these allegations were one of the Taylors' two main claims in this lawsuit.[42] Defendants state they are not in the business of collecting on fraudulent loans and take such allegations very seriously.[43] Defendants expended much time and energy investigating and defending those false claims. Mr. Taylor had no basis to bring them, and as such they were brought in bad faith. Such bad faith merits an award of monetary sanctions to Defendants in the form of attorney's fees.

## ATTORNEY'S FEES

The Supreme Court has clarified that bad faith sanctions under a court's inherent power are "limited to the fees the innocent party . . . would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183–84 (2017). Under this standard, "the district court has broad discretion." *Id.* However, it is necessary for a court using its inherent power, "to establish a causal link – between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* at 1186. This causal connection "is appropriately framed as a but-for test: The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at. 1187.

The lodestar method is an acceptable approach to determining the amount of fees awarded in sanctioning a party for bad faith conduct under a court's inherent power. *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015). The lodestar is "the reasonable number of hours spent on the litigation multiplied by a reasonable hourly rate. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000). The burden

---

[42] Hr'g Tr., May 14, 2020: ("[T]hat was one of our two main claims.").

[43] *Id.*: ("[T]hey're not in the business of collecting debts that are not owed or holding someone accountable for a debt that was procured through identity theft much less sued for it. So we took these allegations very seriously.").

9

is on the party requesting attorney's fees to prove "the amount of hours spent on the case and the appropriate hourly rates." *Id.* at 1233–34. To prove the hours reasonably spent on litigation, "the party must submit 'meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Id.* (citation omitted). When determining the appropriate hourly rate, "the district court should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation." *Id.* at 1234 (citation omitted). "Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1257 (10th Cir. 1998).

<u>Defendants' Request for Attorney's Fees</u>

Defendants submitted detailed billing records for each attorney that worked on the case, including descriptions of each task worked on and the amount of time allocated to each task.[44] Defendants state the legal fees incurred to April of 2020 total "at least $80,738.75."[45] These fees do not include time spent in May of 2020, which includes the hearing on the Motion for Sanctions, nor do they include local counsel time or costs incurred.[46] Defendants ask for an award of all of the attorney's fees submitted, and alternatively ask for an award of fifty percent of the fees.[47]

---

[44] Defs.' Reply in Further Supp. of Submission of Attny's Fees, ECF 121, Exhibit A.

[45] Defs.' Submission of Attny's Fees, ECF 104.

[46] *See Id.*

[47] Defs.' Reply in Further Supp. of Submission of Attny's Fees, ECF 121.

10

Time Entries

The Taylors argue many of the time entries are duplicative and generally challenge the amount of time counsel spent on activities.[48] However, the Court finds the amount of time counsel spent on activities to be reasonable. The Taylors' complaint contained eight causes of action.[49] Their motion to amend the complaint contained a new and novel theory regarding Mr. Taylor's loan and dischargability under the bankruptcy code.[50] And their motion for summary judgment contained many complex theories of liability, some of which were issues of first impression before this Court.[51]

The Taylors' opposition complained of paralegal time spent checking Pacer records.[52] Mr. Alltmont removed the 33 entries complained of, totaling $1,078.[53] Finally, the Taylors complain that Defendants failed to allocate the time entries to the identity theft claim.[54] But the identity theft claim underpinned each cause of action in the Taylors' complaint.[55] For each cause of action, the Taylors claimed the loan was the result of fraud, that Mr. Taylor did not owe on it, and that Defendants were unlawfully collecting on a loan they knew he did not owe.[56] Defendants' investigations, communications with opposing counsel, and drafts of motions all necessarily encompassed these underlying claims. As such, the Court will award Defendants fifty percent of the time spent on this case because Mr. Taylor's claims of identity theft were one of

---

[48] Pls.' Resp. to Defs.' Submission of Attny's Fees, ECF No. 117.

[49] Pls.' Am. Compl., ECF No. 8.

[50] Pls.' Mot. to Amend, ECF No. 43.

[51] *See* Order on Summ. J., ECF No. 136.

[52] Pls.' Resp. to Defs.' Submission of Attny's Fees, ECF No. 117.

[53] Defs.' Reply in Further Supp. of Submission of Attny's Fees, ECF 121.

[54] Pls.' Resp. to Defs.' Submission of Attny's Fees, ECF No. 117.

[55] Pls.' Am. Compl., ECF 8.

[56] *Id.*

two main claims in his case. However, the Court will further deduct paralegal time and time entries that were solely allocated to the loan assignment documentation, as will be explained below.

Hourly Rate

Defendants billed time for four separate attorneys: Michael D. Alltmont at $335 per hour, Justin H. Holmes at $335 per hour, Bryan C. Shartle at $385 per hour, and David Israel at $440 per hour.[57] Defendants did not provide evidence of the market rate for attorneys in the relevant legal community and practice area.[58] The case was docketed as a personal injury case and removed to federal court under diversity jurisdiction. The complaint contains eight causes of action – two for violations of the Utah Consumer Sales Practices Act, and one each for fraud upon the court, intrusion upon seclusion, communications fraud, unjust enrichment, intentional infliction of emotional distress, and civil conspiracy.[59] However, as discussed above – the two main factual claims underpinning each cause of action were Mr. Taylor's identity theft claim and the claim that Defendants could not prove assignment of the loan.[60] As such, while this case contains many causes of action, it is most analogous to an unfair debt collection case.

A court "may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000). As discussed above, Defendants

---

[57] Defs.' Reply in Further Supp. of Submission of Attny's Fees, ECF No. 121. Each attorneys' fee changed slightly over the course of litigation. For example, Mr. Michael D. Alltmont's fee was $325 at the outset of litigation and $335 by the end of litigation. The Court will use the fees from the end of litigation to calculate the lodestar. As the Supreme Court stated, trial courts should not become "green-eyeshade accountants." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187, 197 L. Ed. 2d 585 (2017) (citation omitted). "'The essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Id.* (citation omitted).

[58] *See* Defs.' Reply in Further Supp. of Submission of Attny's Fees, ECF No. 121.

[59] Pls.' Am. Compl., ECF 8.

[60] *Id.*

did not provide evidence of the prevailing market rate in Salt Lake City. Utah courts have found hourly rates of $320 to $450 reasonable in FDCPA cases. *See Reid v. LVNV Funding LLC,* No. 2:14-CV-471, 2016 WL 4532107, at *2 (D. Utah Aug. 29, 2016) (finding hourly rate of $320 reasonable in 2016); *Morrison v. Express Recovery Servs., Inc.*, No. 1:17-CV-51, 2020 WL 3791893, at *3 (D. Utah July 7, 2020) (finding hourly rates of $450, $350, and $180 reasonable for the Salt Lake City market). As such, because Defendants' requested hourly rates are similar, the Court finds the hourly rates requested by Defendants to be reasonable.

Fee Award

As discussed above, Defendants initially requested the full amount of their fees through April 2020, which Defendants stated was at least $80,738.75. In response to the Taylors' complaint regarding paralegal fees, Defendants reduced their fee by $1,078. The Court will not award fees for paralegal work. Defendants' requested fees for paralegal work, including the $1,078 Defendants retracted, totals $4,396.

The Court will further deduct the following time entries because they were either solely related to the loan assignment documentation or were related to discovery on a date after the January 6, 2020 hearing in which Mr. Ady conceded Mr. Taylor took out the loan.[61]

| Date | Attorney | Description | Hours | Amount Billed |
|---|---|---|---|---|
| 6/19/19 | MDA | Rvw. and analyze claims that schedule to Pool Supplement not contemporaneous to Pool Supplement, rvw. documents, final modification within 10 days of signatures on Pool Supplement; analyze and develop next steps | 0.3 | $97.50 |
| 3/2/20 | JHH | Review and analyze status of case; analyze potential liability and analyze potential | 0.2 | $67.00 |

---

[61] However, the Court will not deduct other time entries following the January 6 admission because Defendants' work on the Motion for Sanctions was related to the identity theft claim and Defendants had to redraft their Motion for Summary Judgment, which they had started prior to Mr. Taylor's admission.

|  |  | settlement; memo, re: determine if needed plaintiff deposition. |  |  |
|---|---|---|---|---|
| 3/4/20 | JHH | Tel. conf. with opposing counsel re request for outstanding discovery; memo to file. | 0.3 | $100.50 |
| 3/15/20 | JHH | Evaluate status of case; review discovery; analyze possible discovery extension | 0.2 | $67.00 |
| 4/20/20 | JHH | Receipt and review order granting parties' motion for extension of time to file dispositive motions; memo to file. | 0.2 | $67.00 |

Accordingly, the Court will further deduct $399 from the attorney's fees. The lodestar calculation for Defendants' fees are as follows: Bryan C. Shartle billed 28.6 hours at an hourly rate of $335, totaling $9,581; David Israel worked 1.65 hours at an hourly rate of $440, totaling $726; Justin H. Holmes billed 34.2 hours at an hourly rate of $335, totaling $11,457; and Michael D. Alltmont billed a total of 161.45 hours at an hourly rate of $335, totaling $54,085.75. Thus, the requested attorney's fees total $75,849.75. The Court will deduct $399 from this amount as discussed above, totaling $75,450.75. As such, the Court will award fifty percent of $75,450.75 in attorney's fees, which is $37,725.37.

## CONCLUSION

Mr. Taylor acted in bad faith by grounding the present lawsuit in part upon a false claim. The Court sanctions Mr. Taylor for his bad faith conduct in the form of attorney's fees. Defendants are awarded $37,725.37. Accordingly, Defendants' Motion for Sanctions is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

DATED this 9th day of March, 2021.

Bruce S. Jenkins
United States Senior District Judge